**UNITED STATES of America**

v.

**Francisco Martin DURAN, Defendant.**

**Crim. No. 94–447 (CRR).**

United States District Court,
District of Columbia.

Feb. 8, 1995.

Leigh A. Kenny, Federal Public Defender for D.C., Washington, DC, for defendant.

Eric A. Dubelier, Brenda Jene Johnson, U.S. Attorney's Office, Washington, DC, for U.S.

### ORDER

CHARLES R. RICHEY, District Judge.

The Court is in receipt of a "Supplemental Memorandum in Support of the Motion of the Washington Post, the New York Times

Company and the National Broadcasting Company, Inc. for Access to the Duran Letter," as well as the "Government's Supplemental Response to Motion of the Washington Post and the New York Times for Access to Duran Letter," and a "Memorandum in Response to the Government's Supplemental Response to Motion for Access," which was also filed on behalf of the Washington Post, the New York Times Company and the National Broadcasting Company, Inc.

The Court has previously advised that it could not evaluate the document at issue until both parties had apprised the Court of all the relevant facts in this case and until the Court has received and reviewed all relevant pleadings. *See* Order entered November 30, 1994. Since that time, the Defendant has filed a Motion to Suppress Evidence Seized From the Chevrolet Truck. A hearing on that Motion and others is scheduled for March 16, 1995. The Government now takes the position that, "[b]ecause the defendant has moved to suppress the document on Fourth Amendment grounds, it may be appropriate, in an abundance of caution, to decline to release the document until the suppression motion is resolved." Government's Supplemental Response, at 2.

■ The Washington Post, The New York Times Company, and the National Broadcasting Company, Inc. (hereinafter "Movants") respond that the Court may not withhold the document from the public in the exercise of "an abundance of caution," because the public's First Amendment right of access to criminal trials may be overcome only if closure is narrowly tailored to serve a compelling governmental interest. Memorandum in Response, at 2. The Court finds, however, that it cannot make an informed decision on the Movants' request at this time, and the case law supports withholding any decision pending further proceedings in this case.

■ As the Court of Appeals for the First Circuit observed, "[t]he Supreme Court has emphasized that the public's right of access to criminal proceedings is not absolute, and that it must in some circumstances give way to the paramount rights of the accused." *In re Globe Newspaper Company,* 729 F.2d 47, 50 (1st Cir.1984) (citing *Press–Enterprise Co. v. Superior Court of California,* 464 U.S. 501, 507–11, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606, 102 S.Ct. 2613, 2619–20, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581 n. 18, 100 S.Ct. 2814, 2830 n. 18, 65 L.Ed.2d 973 (1980)). Because " '[n]o right ranks higher than the right of the accused to a fair trial,' " " 'in cases that arouse intense public interest, ... 'adverse publicity can endanger the ability of the defendant to receive a fair trial.' " *Id.* at 52 (quoting *Press–Enterprise Co.,* 464 U.S. at 507–09, 104 S.Ct. at 823 and *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 2904–05, 61 L.Ed.2d 608 (1979)). Moreover, under the common law, a decision to grant or deny access is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 599, 98 S.Ct. 1306, 1312–13, 55 L.Ed.2d 570 (1978) (footnote omitted). In view of these principles, this Court finds that it needs more information regarding the import and admissibility of the document in question before it can fully and properly evaluate whether and to what extent disclosure of the same would impact the Defendant's right to a fair trial.

In this case, a suppression hearing has not yet been held to consider the legality of the search in question. Critically, the First Circuit further observed that "[i]n a highly publicized case such as this one, the premature publication of damaging communications that are later determined to have been unlawfully obtained and so not admissible in evidence might make a fair trial impossible...." *Id.* at 55.[1] The Court continued, "[i]f [the mate-

---

1. In *In Re Globe Newspaper,* the First Circuit refused to grant access to statements obtained by the government through a wiretap, where the Defendant had not yet had the opportunity to litigate issues concerning its legality under Title

III, 18 U.S.C. § 2510 *et seq. In Re Globe Newspaper,* 729 F.2d at 58. The Movants attempt to distinguish this case because "there is no federal statute making it a criminal offense to disclose the document to the public." Movant's Reply

rial in question] is found to have been legally obtained and to be admissible at trial, the public will eventually have access to that material...." *Id.* at 57. Although the Court recognized that "this delay injures the First Amendment right of access," it further stated that "we think that the harm in delayed access is not as great as that in denied access." *Id.*

The Court reads this language as sanctioning just the exercise of "an abundance of caution" that the Government urges here. While the Defendant's right to a fair trial is paramount, withholding decision on whether disclosure is appropriate until after the Court has an opportunity to consider fully the Defendant's Motion to Suppress "minimize[s] the intrusion on the public's First Amendment right to access." *Id.* at 56. The First Circuit discussed further the need to conduct suppression hearings before a trial court can be fully informed:

> Until the defendant[ ] ha[s] had a fair opportunity to test that material at a suppression hearing, the court cannot know whether it contains material that will be found to be inadmissible. If extremely damaging statements of the defendants are blazoned in the media before trial, it will be difficult for a juror who has been exposed to those statements to avoid considering them during trial even if he is carefully instructed that they are not part of the evidence on which his verdict must be based.

*Id.* at 57.

Moreover, it is undisputed that the document in question was provided to the Magistrate Judge of this Court at the Defendant's presentment on October 31, 1994, in support of the Government's request that he be required to undergo a competency examination. Although the Defendant argues that the First Amendment right of access does not even extend to the document at issue, Defendant's Opposition, at 1, the Court need not determine that question at this time as, in any event, the Court finds persuasive the First Circuit's view that

> the interests of the press and the public weigh less heavily at this early point in the proceedings than they do later, because the tradition of openness in [pretrial proceedings] is not as strong and because the press and the public will have later opportunities to examine the material admitted at those hearings.

*Id.* at 59.

This is not to say that the First Amendment right of access is not of critical importance. Rather, under the facts of the case as the Court now knows them, it is the Court's determination that the most prudent course at this time—and one which takes into careful consideration the Defendant's right to a fair trial and the public's First Amendment right of access to the document in question— is to stay resolution of the Movants' request pending the hearing on the Defendant's Motion to Suppress.

The Movants further argue that the Defendant's notification that he intends to rely upon an insanity defense may minimize the Defendant's argument that disclosure of the letter would prejudice his right to a fair trial. Supplemental Memorandum, at 2. In the Court's view, however, what significance—if any—the document at issue has on this case has *not* yet been determined, and the Court is in need of further advice from counsel on that question through resolution of the pretrial motions now extant. Until that is done, the Court is put in the untenable position, as indicated above, of not being able to make an informed decision in accordance with the law. Until the parties can make all issues ripe for decision and the Court can conduct whatever

Memorandum, at 10. The First Circuit further stated, however, that "[t]he purpose of the suppression remedy is ... also to protect the public's interest in deterring unlawful searches." *In Re Globe Newspaper*, 729 F.2d at 54 (citing *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974) (holding that the exclusionary rule's "prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures ...")). Thus, the Court finds that, as *In Re Globe Newspaper* recognized the independent importance of protecting Fourth Amendment interests under the similar circumstances of that case, application of its reasoning to the case at bar is not foreclosed by the absence of Title III concerns.

hearings necessary, the Court finds it premature to rule on the Movants' request.

Accordingly, it is, by the Court, this 8th day of February, 1995,

ORDERED that the "Motion of the Washington Post, the New York Times Company and the National Broadcasting Company, Inc. for Access to the Duran Letter" shall be, and hereby is, HELD IN ABEYANCE pending resolution of the Defendant's pretrial Motions.